[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Petitioner Robert Santiago, aka Robert Zapata, is presently serving a total effective sentence of twenty years suspended after fourteen years, three years probation, imposed on November 15, 1990 (Ronan, J.) pursuant to a plea agreement. He was convicted on October 3, 1990 (Maiocco, J.) following his written pleas of nolo contendere to Substitute Informations charging him with manslaughter in the first degree under C.G.S. Sec. 53a-55 (a)(2), assault in the first degree under C.G.S. Sec. 53a-59 (a)(1) and failure to appear in the first degree under C.G.S. Sec. 53a-172. The manslaughter charge was based on his alleged fatal shooting of one Richard Brandon on October 17, 1987. That charge was substituted for the charge of murder (C.G.S. Sec. 53a-54a) CT Page 10074 upon which his jury trial was then in progress. The assault charge was based on an unrelated incident occurring on December 14, 1985, in connection with which he failed to appear in December 1987.
Petitioner now attacks his convictions on the ground of ineffective assistance of his trial counsel, Erskine D. McIntosh, Esq. The somewhat inconsistent claims in his six-count Second Amended Petition, primarily relating to his manslaughter conviction, may be briefly summarized as follows:
 First Count — failure of trial counsel to accept an offered sentence of fifteen years suspended after twelve.
 Second Count — failure of trial counsel to make certain that he be tried on the manslaughter charge in a speedy fashion.
 Third Count — failure of trial counsel adequately to prepare for trial in that counsel failed to investigate witnesses who would have testified that the victim shot himself.
 Fourth Count (orally amended at the inception of this hearing) — failure of counsel to suppress subsequently recanted statements of various witnesses implicating Petitioner.
 Fifth Count — lack of communication by trial counsel with Petitioner.
 Sixth Count — failure of the trial court (Ronan, J.) to allow Petitioner to dismiss his trial counsel.
At the inception of this habeas hearing, Petitioner's attorney with his consent withdrew all but the First and Fourth Counts. When during the course of the hearing Petitioner himself persisted in giving testimony and raising issues germane only to the Fifth and Sixth Counts, the Court allowed him to rescind his withdrawal of the same. Later during the course of the hearing, the Court allowed Petitioner to reinstate the Second and Third Counts when he CT Page 10075 persisted in similar conduct. Subsequently, he again voluntarily withdrew the Second and Third Counts.
Although Petitioner neither moved to withdraw his pleas under P.B. Secs. 719-722 nor directly appealed his convictions, the Court finds that he has not deliberately bypassed orderly procedures, as his claims primarily assert ineffectiveness of trial counsel. State v. Leecan, 198 Conn. 517,541-42 (1986).
Trial counsel, Attorney McIntosh, served as a Public Defender from 1981 through 1991, the last five years in Part A in Bridgeport. He has had extensive trial experience in criminal law cases. Since January, 1992 he has been in private practice, specializing, inter alia, in criminal defense and civil rights cases.
In order to succeed on a claim of ineffective assistance of counsel, a petitioner must show that his counsel's performance was not reasonably competent within the range of competence displayed by attorneys with ordinary training and skill in the criminal law, and that this lack of competency contributed to the conviction. Summerville v. Warden,29 Conn. App. 162 (1992). Petitioner offered no expert legal testimony in support of his claims, but exclusively relied on his own testimony, that of one witness regarding the Fourth Count, and the exhibits. Respondent offered the testimony of Attorney McIntosh.
At the outset, the Court notes that if Petitioner's conduct at this hearing is indicative, he may be a difficult client for any attorney, no matter how experienced and competent, to please.
There was no evidence whatsoever to support Petitioner's claim of an offer of fifteen years suspended after twelve. On the contrary, the evidence establishes that the agreement provided for a cap of fifteen years of actual incarceration with the right to argue down to a floor of twelve, the amounts if any of suspended term in addition thereto and probation to be at the discretion of the sentencing court. These provisions were carefully explained to Petitioner by Attorney McIntosh, by Judge Maiocco at the plea canvas (Resp. Ex. D — Tr. pp. 23-27, 32-34) and alluded to at sentencing (Petr. Ex. 7 — Tr. p. 3). At his plea hearing, Petitioner CT Page 10076 specifically stated his understanding that he could not count on getting only twelve years to serve, but could get as much as fifteen, exclusive of suspended portion. (Resp. Ex. D — Tr. p. 25).
The Fourth Count involves various underage witnesses who initially gave statements to the police implicating Petitioner in the homicide, but who apparently were prepared to recant these statements on the ground that they had been coerced into giving them. Three of these witnesses so recanted at the September 4, 1990 probable cause hearing (Resp. Ex. A — Tr.), which occurred shortly after the murder charge was reinstated. One of these three, Christopher Harrigan, so testified on behalf of Petitioner at this habeas hearing. Symptomatic of the three, Harrigan is presently incarcerated on criminal charges unrelated to this proceeding.
The trial testimony of these witnesses apparently was essential to conviction. If they were similarly to recant at trial, their initial statements could be introduced as substantive evidence against Petitioner under the rule of State v. Whelan, 200 Conn. 743 cert. denied, 479 U.S. 994
(1986). See also, State v. Hopkins, 222 Conn. 117 (1992); State v. Alameda, 211 Conn. 441 (1989). The court (Ford, J.) relied on Whelan in finding probable cause.
Petitioner asserts that Attorney McIntosh was derelict in not prosecuting a pretrial motion to suppress the implicating initial statements of these witnesses. Neither counsel at this habeas hearing could cite any authority for the proposition that a criminal defendant has standing to assert such a motion for a pre-trial evidentiary hearing to suppress on these grounds prior implicating statements of potential non-party witnesses. However, Petitioner's counsel asserts that such a motion, in the nature of a motion in limine, should have been prosecuted on the ground that a defendant's constitutional rights are violated by the inherent unreliability of an identification resulting from police coercion, citing State v. Ramsundar, 204 Conn. 4
(1987).
Evans v. Warden, 29 Conn. 274 (1992), recently held that the requirement of supporting legal expert testimony on asserted counsel ineffectiveness issues in habeas proceedings CT Page 10077 is to be determined on a case by case basis. Under the circumstances of this case, such expert testimony in support of Petitioner would have been critical, if not mandated, particularly on the issue presented in this Fourth Count. See, e.g., Siemon v. Stoughton, 184 Conn. 547 (1981) commenting on the habeas trial testimony of two legal experts in support of an ineffectiveness claim involving a potentially exculpatory issue.
Even without reference to the lack of such supporting expert testimony, the Court finds this claim of ineffectiveness not proved. Attorney McIntosh in fact did concoct and file such a motion (Resp. Ex. F). Although due to the passage of time he could not recall whether hearings on the motion had commenced, it is clear that he was adequately prepared. It would not be unusual, however, for a court to defer this issue until the time of trial when the pertinent testimony of the witness is proferred. Such was the case in Ramsundar, supra.
The Court does note the statement of Judge Maiocco to Petitioner during the course of the October 3, 1990 plea canvas that "over the course of the last few days you have been picking a jury and we have been having suppression hearings." (Emphasis added).
Attorney McIntosh testified of his concern that a jury would not believe that all six of these witnesses had been so coerced. His concern was substantially heightened by the fact that three of these witnesses had along with their initial implicating statements drawn supporting maps. Copies of the initial implicating statement (Resp. Ex. B) and contemporaneous supporting map (Resp. Ex. C) of the witness Harrigan are in evidence.
Petitioner's remaining claims relate to his request to replace Attorney McIntosh and the denial of that request by Judge Ronan. His dissatisfaction centered on the failure of counsel to visit him during his lengthy period of pre-trial incarceration. (Petr. Ex. 4). The request, made on the eve of trial, was denied after full hearing on September 11, 1990 (Resp. Ex. E — Tr.). Jury selection commenced on September 12, 1990 and concluded on September 27, 1990.
The evidence establishes that Attorney McIntosh CT Page 10078 consulted with Petitioner numerous times, properly investigated potential defenses (see e.g. Petr. Exs. 5-6), was prepared on the issues, and was not deficient in his duties as defense counsel.
Petitioner elected to accept the plea agreement rather than run the risks of trial and a consequent more severe sentence. He testified at this habeas hearing that he did so after consulting with his father. That he did so voluntarily and knowingly is established by the lengthy plea canvas of Judge Maiocco, during which Petitioner expressly acknowledged his satisfaction with his counsel's assistance and advice. (Resp. Ex. D — Tr. pp. 12-13).
The petition is dismissed.
David L. Fineberg, Judge.